**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

LATCHMIE NARAYAN TOOLASPRASHAD,

                Petitioner,

    v.                                              No. 10-CV-1050
                                                        (LEK/DRH)
DEBORAH G. SCHULT,

                Respondent.

-----------------------------------------------------------------

**APPEARANCES:**                                   **OF COUNSEL:**

LATCHMIE NARAYAN TOOLASPRASHAD
Petitioner Pro Se
10975-056
Ray Brook Federal Correctional Institution
Post Office Box 9001
Ray Brook, New York 12977

UNITED STATES DEPARTMENT OF JUSTICE      DENISE S. LIPPERT, ESQ.
Attorney for respondent                                Trial Attorney
Civil Division
Office of Immigration Litigation
District Court Section
Post Office Box 868
Ben Franklin Station
Washington, D.C.  20044

HON. RICHARD S. HARTUNIAN                    CHARLES E. ROBERTS, ESQ.
United States Attorney for the                    Assistant United States Attorney
   Northern District of New York
Attorney for Respondent
Post Office Box 7198
100 South Clinton Street
Syracuse, New York 13261

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

Petitioner pro se Latchmie Narayan Toolasprashad ("Toolasprashad") is currently an inmate in the custody of the Federal Bureau of Prisons ("BOP") at the Ray Brook Federal Correctional Institution. On May 13, 1987, in the Eastern District of North Carolina, Toolasprashad pleaded guilty to aiding and abetting a murder. Dkt. No. 20-5 at 2. Toolasprashad was sentenced to life imprisonment (Dkt. No. 20-5 at 2) but remained eligible for parole consideration and with a maximum projected release date of December 16, 2015 (Dkt. No. 20-11 at 2-3). Toolasprashad now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds that (1) an immigration detainer should be removed and (2) his request for naturalization should be granted based upon his previous military service. See Pet. (Dkt. No. 1). Respondent seeks to dismiss the petition pursuant to Fed. R. Civ. P. 12(b)(1) & (6). Dkt. No. 20. Toolasprashad opposes the motion. Dkt. Nos. 21, 24, 27. Also pending is Toolasprashad's motion for a bail hearing. Dkt. No. 31. For the reasons which follow, it is (1) recommended that the motion to dismiss be granted and the petition dismissed with prejudice, and (2) ordered that the motion for a bail hearing be denied..

**I. Background**

Toolasprashad, a national of Guyana, entered the United States as a permanent resident in 1979. Dkt. No. 20-8 at 3. Toolasprashad served as a Medical Specialist in the United States Armed Forces from August 1981 until December 1985, including a deployment to Grenada in the Fall of 1983, before being honorably discharged on

2

December 11, 1985 due to suffering from a personality disorder.[2]  Dkt. No. 20-3; Dkt. No. 20-8 at 3.  While on active duty, Toolasprashad filed a petition for naturalization in September 1985.  Dkt. No. 20-1.  Toolasprashad contends that the application process was timely completed but because he was training, he missed certain of the naturalization deadlines and was subsequently instructed to complete a new naturalization petition.  Dkt. No. 21 at 5-6.  The 1985 naturalization petition was never granted.

On December 13, 1985, two days after Toolasprashad was discharged from the service, a female soldier was murdered at Ft. Bragg, North Carolina.  Dkt. No. 20-3 at 3.  On December 16, 1985, Toolasprashad was arrested and charged in connection with the murder.  Dkt. No. 20-8 at 3.  On April 7, 1986, Toolasprashad received notice that the

---

[2] Toolasprashad contends that he was not given appropriate mental health evaluation and attention prior to his discharge.  Dkt. No. 21 at 5 & n. 3.  To the extent that this can be construed as a claim relating to his ability to plead guilty to this charge willingly and voluntarily, or to assert additional claims pertaining to any other defects in his underlying criminal proceedings including his appointed representation, such claims are irrelevant to the present petition and will not be addressed.  See Dkt. No. 25 at 1, n. 1; see also Roccisano v. Menifee, 293 F.3d 51, 57 (2d Cir. 2002) (explaining that § 2241 and § 2255 provide different forms of habeas relief with the former allowing challenges to conditions and implementation of a sentence whereas the latter challenges the legality of the imposition of the sentence); United States v. Dukes, 727 F.2d 34, 40-41, n.4 (2d Cir. 1984) (explaining that § 2255 petitions are properly filed in the district in which the petitioner was sentenced).  Similarly, Toolasprashad's pending Federal Tort Claims Act complaint is also irrelevant to the pending proceedings.  Dkt. No. 21 at 36-45.

Additionally, Toolasprashad's new allegations that the detainer interfered with his security classification and ability to enroll in programs are also irrelevant to the present proceedings.  Even if such claims were evaluated, they are meritless.  "Congress has granted federal prison authorities the exclusive discretion to control the conditions of confinement . . . [thus inmates] ha[ve] neither a legitimate statutory nor constitutional entitlement to those prison programs from which he may be denied access as a result of the detainer."  Fernandez-Collado v. I.N.S., 644 F. Supp. 741, 744 (D. Conn. 1986) (citations omitted).  "Further, there is no statute or regulation which prevents the BOP from considering INS detainers in assigning security levels."  Deutsch v. United States, 943 F. Supp. 276, 280 (W.D.N.Y. 1996) (internal quotation marks and citations omitted).

Immigration and Naturalization Service ("INS") had begun an investigation to determine whether or not Toolasprashad was subject to deportation. Dkt. No. 20-2 at 2. On May 13, 1987, Toolasprashad pleaded guilty to aiding and abetting the murder and was sentenced as indicated above.

In September 1990, Toolasprashad submitted another petition for naturalization, confirming previous information about his country of origin, date of permanent residence in the United States, and military service. Dkt. No. 20-6. However, Toolasprashad omitted answering questions which pertained to his criminal history. Dkt. No. 20-6 at 4. Upon receiving the incomplete application, INS instituted an investigation into Toolasprashad and discovered his criminal conviction. Dkt. No. 20-7 at 3. Throughout the period of time that Toolasprashad's naturalization petition was pending, he received conflicting information about whether his detainer was still in effect or had been withdrawn. See Dkt. No. 1-2 at 6 (letter from INS indicating that, as of August 27, 1991, Toolasprashad was "not currently deportable."); Dkt. No. 21 at 30 (letter from warden indicating Toolasprashad's detainer had been officially withdrawn on August 27, 1991 and no subsequent detainers had been filed); Dkt. No. 1-4 at 2 (letter from INS dated December 13, 1991 also indicating that as of August 1991 there were no pending detainers against Toolasprashad); Dkt. No. 1-4 at 4, 6 (INS/Oakdale detainer removal notice indicating that as of October 1993 there was no longer a detainer issued against Toolasprashad out of Louisiana, though that "should not effect detainers possibly lodged by other INS offices."). On October 21, 1994, INS determined that Toolasprashad was an alien and subject to deportation. Dkt. No. 20-7 at 2-3.

Toolasprashad applied for further review of his naturalization denial. Dkt. No. 20-8.

On February 24, 1997, his pending application and all previously filed applications were denied based upon his criminal conviction as naturalization was barred because Toolasprashad was deemed to lack good moral character. Dkt. No. 20-8 at 3-4. On May 21, 2008, Toolasprashad was issued another notice of his pending immigration detainer, indicating that prior to his release from incarceration, the Department of Homeland Security ("DHS")[3] was to receive 48 hours notice in which its officers would arrive and take Toolasprashad into its custody in anticipation of his deportation proceeding. Dkt. No. 20-9.

Toolasprashad appealed the filing of the 2008 detainer as inconsistent with the previous decisions which removed his detainer in 1991 and 1993. Dkt. No. 1-6 at 11. On September 30, 2009, Toolasprashad received a response to his appeal which explained that he was currently deemed "'amenable' [for] deportation, and upon completion of [his] sentence, [he] will be processed for an appointment with an Immigration Judge." Dkt. No. 1-6 at 13. Toolasprashad appealed on October 6, 2009, requesting the detainer be removed as it had been previously. Dkt. No. 1-6 at 15. On November 9, 2009, Toolasprashad received another response indicating that the BOP was not the agency which lodged, or could remove, the pending detainer and that based on the current record, Toolasprashad was subject to detention and deportation consistent with the 2008 detainer. Dkt. No. 1-6 at 17. On November 19, 2009, Toolasprashad again appealed the response, contending that BOP was able to remove the detainer. Dkt. No. 1-6 at 19. On

---

[3] "On March 1, 2003, the INS, as an agency within the Department of Justice, was abolished, and its functions were transferred to three bureaus in the newly formed [DHS]." Respondent Mem. of Law (Dkt. No. 20) at 3 n. 4 (citations omitted).

April 2, 2010, Toolasprashad received another denial of his request, which again indicated that the detainer would remain in effect.  Dkt. No. 1-6 at 21.  This petition followed.

### III. Discussion

Toolasprashad's petition seeks to remove his detainer and for his naturalization petition to be granted based upon his prior military service and honorable discharge. Respondent contends that the petition should be dismissed because (1) the immigration detainer does not confer habeas jurisdiction and even if it did, was properly issued; (2) Toolasprashad's petition for naturalization cannot be granted because of his guilty plea; and (3) this Court does not have jurisdiction to hear challenges to removal.

### A. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  "If a controversy is moot, then the Court lacks subject matter jurisdiction over the action."  Ward v. Bank of New York, 455 F. Supp. 2d 262, 266 (S.D.N.Y. 2006) (citations omitted).  "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1945 (2009) (citations omitted).  "[T]he standards for dismissal under [Rule] 12(b)(6) and 12(b)(1) are substantively identical," except that the plaintiff has the burden of establishing jurisdiction in a 12(b)(1) motion.  See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003)

6

(citations omitted).

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477

(2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

### B. Detainer

"In order for this Court to have jurisdiction over [Toolasprashad's] habeas claims, Thompson must be in the custody of [INS or DHS]." Thompson v. I/N.S., 941 F. Supp. 30, 31 (W.D.N.Y. 1996) (citations omitted). The Second Circuit has discussed the practical effect of detainers explaining that it "constitutes (1) a notice that future INS custody will be sought at the conclusion of a prisoner's pending confinement by another jurisdiction, and (2) a request for prior notice regarding the termination of that confinement, and thus does not result in present confinement by the INS." Roldan v. Racette, 984 F.2d 85, 88 (2d Cir. 1993) (citations omitted). However, "the Second Circuit . . . did not rule on the substantive issue concerning 'custody.'" Thompson, 941 F. Supp. at 31; see also Simmonds v. I.N.S., 326 F.3d 351, 354 (2d Cir. 2003) (explaining that the Second Circuit "has not yet resolved the [custody] issue" with detainers, "[n]or [w]ould [it] . . . because [the] final order of removal [wa]s sufficient, by itself, to establish the requisite custody.").

"[T]he district courts in this Circuit have adopted the majority view and found that the mere filing of an INS detainer notice does not satisfy the 'in custody' requirement for habeas jurisdiction." Thompson, 941 F. Supp. at 32 (citations omitted). "[E]ven when a detainer, an order to show cause, and an arrest warrant have been issued, the inmate remains in the custody of the correctional institution until such time as he has completed his

current sentence and is taken into physical custody by the INS." Deutsch, 943 F. Supp. at 279 (citations omitted). Recently, the Second Circuit explained that in certain instances, where a final removal order is in place yet the alien remains in state custody, the 'custody' requirement for the habeas standard has been met. Simmonds, 326 F.3d at 355-56. The question of whether the alien in Simmonds was 'in custody' was never determined though because the Second Circuit held that, despite the final order of removal, where an alien is still due to be confined in state custody for a minimum of ten years and a potential for life, the case was not ripe for review. Id. at 356-59; see also Id. at 360 (explaining that a sentence which will last a minimum of ten years with a potential for never expiring, in conjunction with the extremely fluid status of immigration law, compels the conclusion that such claims are not ripe for review because potential intervening changes in the law would render the litigation moot).

In this case, Toolasprashad has not been issued a final removal order. Respondent's Mem. of Law at 5; see also Dkt. No. 20-9 at 2 (notice of immigration detainer where box indicating that "[d]eportation or removal from the United States has been ordered" is not checked). Thus, with only a detainer filed, the court lacks the jurisdictional basis to entertain the present claims. Even if such an order is in place, Toolasprashad remains in BOP custody until, if ever, released on parole. While not the ten years contemplated it Simmonds, Toolasprashad's situation is strikingly similar in that he too is serving potentially a life sentence. Thus, for the reasons articulated in Simmonds, Toolasprashad's request is also not ripe for review. Accordingly, respondent's motion on this ground should be granted.

**C. Petition for Naturalization**

Aliens are subject to removal from the United States. 8 U.S.C. § 1227(a). An alien is defined as a "person not a citizen or national of the United States." 8 U.S.C. §1101(a)(3). Toolasprashad contends that, based upon his military service and honorable discharge, he is a non-citizen national who is immune from removal. The Fourth Circuit dealt with an identical issue where an enlisted alien claimed that because of his military service, he was a national and not subject to removal from the United States. Dragenice v. Gonzales, 470 F.3d 183, 187 (4th Cir. 2006). The Fourth Circuit determined that, military enlistment, including acceptance of the oath required upon enlisting, was insufficient to establish an alien as a national because (1) the oath did not confer a permanent allegiance between the United States and an alien as military service is temporary by nature, and (2) while Congress has relaxed naturalization requirements for individuals serving in the armed services, it has not completely dispensed with them. Id. at 188-89. If taking the oath and participating in service "alone confer[red] national status . . . then noncitizen soldiers would never be subject to removal and Congress would not have needed to craft an exemption." Id. at 189 (citations omitted). The Fourth Circuit decision is instructive in evaluating Toolasprashad's claims that he is a non-citizen national exempt from removal. As military service did not confer citizenship status upon him, Toolasprashad is still an alien and subject to removal.

In order to become a naturalized citizen, an alien must be of "good moral character," and shall not be naturalized unless he or she has demonstrated continued good moral character. 8 U.S.C § 1427(a)(3). For purposes of immigration and naturalization, a person is lacking in good moral character if he or she has been convicted of an aggravated felony,

10

which includes a crime of violence resulting in imprisonment for more than a year.  8 U.S.C. §1101(f)(8) & (a)(43)(F).  Toolasprashad's guilty plea of aiding and abetting a murder conforms with this definition.

Toolasprashad contends that because his guilty plea came prior to 1990, the crime to which he pled guilty was not categorized as an aggravated felony and, thus, his naturalization petition is not per se barred on the ground of his moral character.  Pet. Mem. of Law (Dkt. No. 21) at 3 (citing United States v. Fuentes - Barahona, 111 F.3d 651, 652 (9th Cir. 1997)).  However, this argument is unavailing.  Various other circuit courts have disagreed with the argument that previously characterized crimes of violence were not also aggravated felonies, despite the change of vocabulary in 1990, and have held that the common parlance and definitions of an aggravated felony are not limited to those categorized as such post-1990.  See United States v. Westcott, 159 F.3d 107, 116-17 (2d Cir. 1998); United States v. Cazares-Gonzalez, 152 F.3d 889, 891 (8th Cir. 1998) (concluding that "prior rape conviction constituted an 'aggravated felony' under the Guidelines definition adopted in 1991 . . . . ").  Murder is the epitome of a crime of violence.  Thus, would also be an aggravated felony under present definitions.  By extension, Toolasprashad's guilty plea to aiding and abetting a murder in the first degree is also a crime of violence, and presently categorized as an aggravated felony.

Moreover, despite his contentions to the contrary, Toolasprashad's prior service in the military does not exempt him from a continued showing of good moral character.  The Second Circuit has determined "that the agency's determination that §1440 veterans[4] still

---

[4] On January 27, 2009, Toolasprashad received a memorandum explaining why his immigration detainer was not being revoked.  Dkt. No. 20-10.  In that explanation, prior

11

needed to show good moral character before naturalizing was reasonable." O'Sullivan v. United States Citizen & Immigr&on Serv., 453 F.3d 809, 814 (7th Cir. 2006) (citing Nolan v. Holmes, 334 F.3d 189, 198 (2d Cir. 2003) ("Notwithstanding Congress's desire to reward aliens who have served the United States in its Armed Forces, it hardly seems

---

> naturalization statutes which granted citizenship to those in the armed forces, and were then struck down and revoked, were discussed. Dkt. No. 20-10 at 3; see also Matter of Reyes, 910 F.2d 611 (9th Cir. 1990) (holding invalid an executive order signed by the president which provided alternate methods for naturalization for those who served honorably in the military during engagements in specific geographic areas during Grenada). Toolasprashad arguably would have relied upon such statutes, which were still effective, when he filed his first petition for naturalization. However, for the reasons previously discussed, that petition was never granted. Therefore, Toolasprashad is bound by current statutory provisions in his fight to establish his naturalization. Present federal law provides that:
>
>> Any person who, while an alien or a noncitizen national of the United States, has served honorably . . . in an active-duty status in the military, air, or naval forces of the United States during either World War I or during a period beginning September 1, 1939, and ending December 31, 1946, or during a period beginning June 25, 1950, and ending July 1, 1955, or during a period beginning February 28, 1961, and ending on a date designated by the President by Executive order as of the date of termination of the Vietnam hostilities, or thereafter during any other period which the President by Executive order shall designate as a period in which Armed Forces of the United States are or were engaged in military operations involving armed conflict with a hostile foreign force, and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if (1) at the time of enlistment, reenlistment, extension of enlistment, or induction such person shall have been in the United States . . . whether or not he has been lawfully admitted to the United States for permanent residence, or (2) at any time subsequent to enlistment or induction such person shall have been lawfully admitted to the United States for permanent residence.
>
> 8 U.S.C. § 1440(a). The statute also provides that individuals applying for naturalization pursuant to § 1440 must "comply in all other respects with the requirements of this subchapter, except . . ." additional restrictions regarding age, residence, and ability to pay the petition fees. Id. §1440(b). Thus, based on Toolasprashad's prior service, it appears he may presently petition for naturalization based upon § 1440.

unreasonable for the INS to have inferred that Congress would not have intended to single out persons trained and/or experienced in physical confrontations for elimination of the requirement of good moral character.")).  Additionally, other circuit courts have found that the special provisions granting alien service members relaxed conditions to acquire naturalization do not dispense with the good moral character requirement.  See O'Sullivan v. United States Citizen & Immigration Serv., 453 F.3d 809, 812-15 (7th Cir. 2006); Lopez v. Henley, 416 F.3d 455, 456 (5th Cir. 2005) (holding that alien "was properly deported because his criminal conviction for drug possession rendered him unable to demonstrate the requisite good moral character."); Santamaria-Ames v. I.N.S., 104 F.3d 1127, 1130 (9th Cir. 1996) (holding that "servicemen and servicewomen are not exempt from section 1427's good moral character requirements . . . .").

     Accordingly, despite his military service, Toolasprashad was still required to establish good moral character in order for his naturalization petition to be granted.  As Toolasprashad has a violent felony conviction from his plea to aiding and abetting a murder, which resulted in a life sentence in prison, Toolasprashad has also been convicted of an aggravated felony which automatically precludes him from ever establishing the requisite good moral character required for naturalization.  Therefore, even construing all of Toolasprashad's accolades and community service in the light most favorable to his case, he cannot overcome the bar to good moral character that his conviction and subsequent incarceration imposed.  Thus, he has failed to state a claim upon which relief can be granted and respondent's motion on this ground should be granted.

**D. Removal**

The most recent detainer provided to Toolasprashad indicates that an investigation has been initiated to determine whether he is subject to removal. Dkt. No. 20-9 at 2. Toolasprashad disputes the assertions in this document. However, the Court lacks jurisdiction to review decisions regarding whether and when the government should initiate removal proceedings. See 8 U.S.C. 1252(g) ("Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.") *amended by* the REAL ID Act of 2005 ("RIDA"), Pub. L. 109-13, Div. B., §106(a)[5] (providing that all judicial review for deportation, exclusion, or removal orders lies exclusively within the purview of the appropriate United States circuit court of appeals, not the district court). 8 U.S.C. § 1252(a)(5); see also Elkimya v. Dep't of Homeland Sec., 484 F.3d 151, 153 (2d Cir. 2007) ("[T]he REAL ID Act repealed the use of habeas petitions to challenge orders of removal; petitions for review filed in the courts of appeals are now the exclusive procedural vehicle for seeking review of

---

[5] "Prior to the enactment of the REAL ID Act, a non-criminal alien could seek judicial review . . . through either (i) a petition for review . . . or (ii) a habeas corpus petition filed pursuant to 28 U.S.C. § 2241 . . . ." Ruiz-Martinez v. Mukasey, 516 F.3d 102, 113 (2d Cir. 2008) (citations omitted). "On May 11, 2005, Congress enacted the REAL ID Act, which . . . directed that habeas petitions challenging orders of removal pending in a district court . . . be transferred to the appropriate Court of Appeals . . . ." as well as "amend[ing] the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the 'sole and exclusive means for judicial review' of final orders of removal." Id. (citations omitted). Lastly, "the REAL ID Act provided that the Act was effective immediately . . . ." Id.

such orders.") (citations omitted).

Toolasprashad has not yet received a final order of removal and, therefore, cannot yet seek judicial review. Even when judicial review is ripe, current statutory law indicates that the Second Circuit is the appropriate venue to evaluate the claim as the Northern District's ability to hear such cases has been expressly eliminated by the REAL ID Act. Thus, this Court does not retain jurisdiction over hearing such cases. Accordingly, respondent's motion should be granted on this ground.

### III. Motion for a Bail Hearing

Toolasprashad recently moved for a hearing on bail pending a final determination of his petition. Dkt. No. 31. "A habeas petitioner should be granted bail only in unusual circumstances or when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." United States v. Wall, No. 06-CR-0400, 2008 WL 920309, at *1 (N.D.N.Y. Apr. 2, 2008) (McAvoy, J.) (citing Ostrer v. United States, 584 F.2d 594, 597 (2d Cir.1978)). No unusual, extraordinary, or exceptional circumstances have been demonstrated here. Accordingly, Toolasprashad's motion for a bail hearing is denied.

### IV. Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that respondent's motion to dismiss (Dkt. No. 20) be **GRANTED** and Toolaspharshad's petition for habeas corpus be **DISMISSED**; and

15

2. **ORDERED** that Toolaspharshad's petition for a bail hearing (Dkt. No. 31) is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated: April 7, 2011
      Albany, New York

David R. Homer
U.S. Magistrate Judge